IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

In re:

Stephen M. Middleton, Case No. 15-01879-JCO
Allyson N. Singley, Case No. 15-02015-JCO
Jennifer Pistole, Case No. 15-02132-HAC
Crystal R. Vinson, Case No. 15-02151-HAC
Leonard G. Thiewes and Michele M. Thiewes, Case No. 15-02167-JCO
Diana C. Chapman, Case No. 15-02380-HAC
Thomas Marshall Marr, Jr., Case No. 15-02399-JCO
James A. Harper, Case No. 15-02417-HAC
Tamarcus Jerome Monigan, Case No. 15-02430-HAC
Melissa Jerkins Zak, Case No. 15-02446-HAC
Mary Paige Rabren, Case No. 15-02452-JCO
Brad A. Shelton, Case No. 15-02456-JCO
Terri L. Justice, Case No. 15-02490-HAC
Timmie Eugene Godwin and Simone Godwin, Case No. 15-02567-HAC
Joanne O. Brodie, Case No. 15-02640-JCO
Willie E. Niles and Lula L. Niles, Case No. 15-02656-HAC
Rhodongia R. Cleveland, Case No. 15-02657-HAC
Scott N. Murphy, Case No. 15-02660-HAC
Elijah Howard and Shelia Yelding Howard, Case No. 15-02668-HAC
Patsy Bayer, Case No. 15-02685-JCO
Joseph S. Skelton and Marty M. Flirt, Case No. 15-02732-JCO
Monica Latrese Hegler, Case No. 15-02740-JCO
Tiffany M. Murray, Case No. 15-02745-JCO
Brandon W. Saksa, Case No. 15-02753-HAC
Carolyn E. Reid, Case No. 15-02756-HAC
Angela R. Shaffer, Case No. 15-02774-HAC
Susan D. Ernandez, Case No. 15-02775-JCO
Carola A. Conrad, Case No. 15-02779-HAC
Alicia V. Shamberger, Case No. 15-02790-HAC
Robert Kimbrough, Case No. 15-02796-JCO
Gabrielle S. Morgan, Case No. 15-02856-HAC
Gwendolyn Mitchell LeFoy, Case No. 15-02947-JCO
Walter Raymond Lister and Barbara Jean Lister, Case No. 15-02960-JCO
Rickie Earl Dailey, Jr., Case No. 15-02969-JCO
Lana Joy Phillips, Case No. 15-03001-HAC
Darrell V. Miller and Charlene D. Miller, Case No. 15-03003-HAC
Shermiane Cartez Hall, Case No. 15-03007-HAC
Philip Wayne Linton and Peggy Ray Linton, Case No. 15-03063-JCO
Byron Cowan, Jr. and Constance Cowan, Case No. 15-03086-HAC
John F. Herman, Case No. 15-03101-HAC
Evelyn F. Ellzey, Case No. 15-03162-JCO

OPINION

These cases present an issue which last vexed Alabama bankruptcy petitioners and judges in the early 1980's: how to apply a change in Alabama's exemption limits -- which by statute are based on the date of debt -- to bankruptcy cases with dozens of debts? We find that, under the binding authority of First National Bank v. Norris, 701 F.2d 902 (11th Cir. 1983), the "old" exemption limits apply in Chapter 7 cases where all the debts were incurred prior to the exemption change. But for "mixed" cases involving debts incurred both before and after the exemption change, Bankruptcy Code § 726(b)'s mandate that claims of the same class be paid "pro rata" prohibits apportionment of payments to unsecured creditors based upon the date of debt. After examining various options, the Court finds that applying the exemption limits as of the date of the petition in "mixed debt" Chapter 7 cases complies with § 726(b) and is the approach most consistent with bankruptcy law and other state laws.

Jurisdiction

The two undersigned bankruptcy judges heard oral argument on the trustees' objections to exemptions in the 41 above-listed Chapter 7 cases on December 11, 2015. The Court has jurisdiction to hear the matter pursuant to 28 U.S.C. §§ 1334 and 157 and the order of reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the Court has authority to enter a final order. However, this opinion is not a final order. Because the entry of an order on exemptions will involve a review of the claims in each Chapter 7 case, the Court will set the cases for separate hearings to determine the exemptions available in each particular case pursuant to the guidelines set out in this opinion. The rulings in this opinion will be incorporated in a final order on objections to exemptions which will be entered separately in each case.

2

Discussion

On June 11, 2015, Alabama amended the state's homestead and personal property exemptions for the first time in over thirty-five years. The personal property exemption was raised from $3,000 to $7,500, and the homestead exemption was raised from $5,000 to $15,000. Alabama Code §§ 6-10-2, 6-10-6. A new provision found at § 6-10-12 provides that every three years, beginning in April 2018, the exemption limits shall be adjusted to reflect the cumulative change in the federal Consumer Price Index.

Although the Bankruptcy Code provides for both state and federal exemptions, it allows states to "opt out" of the federal exemptions altogether, which Alabama has done. 11 U.S.C. § 522(b)(2); Alabama Code § 6-10-11. Alabama bankruptcy debtors are thus limited to the state exemptions. By comparison, the current federal bankruptcy exemptions are $3,675 for a motor vehicle, $12,250 for household items, and $22,975 for homestead. 11 U.S.C. § 522(d).

The problem with applying Alabama exemptions in bankruptcy court is caused by Alabama Code § 6-10-1, which provides that the exemptions as of the date of debt apply:

> The right of homestead or other exemption shall be governed by the law in force when the debt or demand was created, but the mode or remedy for asserting, ascertaining, contesting, and determining claims thereto shall be as prescribed in this chapter.

Application of this "date of debt" provision is straightforward enough in the usual state court context of a creditor suing a debtor on one note or debt. But the statute, which predates both the 1898 Bankruptcy Act and the 1978 Bankruptcy Code, does not fit perfectly in the context of a single bankruptcy case with numerous debts arising on different dates.

The applicable exemptions in a Chapter 7 determine what the debtor will be allowed to keep when making the "fresh start" envisioned by the bankruptcy process. The Chapter 7 trustee liquidates all property of the estate that is not exempt and distributes the proceeds to creditors

3

pursuant to the distribution scheme of Bankruptcy Code § 726. If the debtor wants to keep personal property or homestead valued at more than the applicable exemption, he can "buy back" the property from the trustee by either paying cash or agreeing to pay over time. For example, assume a Chapter 7 debtor under the pre-June 2015 law owns a vehicle worth $5,000 with no lien on it. Even if he has no other personal property whatsoever, he must pay the trustee the $2,000 over and above his $3,000 exemption in order to keep the car. The debtor thus in effect pays twice for the vehicle -- once to the original seller and then (at least for a significant portion) again to the trustee.

Pure "old debt" cases. The Eleventh Circuit considered the application of Alabama Code § 6-10-1 in the context of a Chapter 7 case where all the debts predated the exemption change in First National Bank v. Norris, 701 F.2d 901 (11th Cir. 1983). Prior to May 19, 1980, Alabama's homestead exemption was $2,000, to be shared by joint debtors; on that date, it was increased to $5,000, which could be claimed by each debtor in a joint case. Id. at 903-4. The married debtors in Norris claimed a $10,000 joint homestead exemption based upon the amended law even though all their debts predated the change in law. The Eleventh Circuit found that Bankruptcy Code § 522(b)(3),[1] which provides for state's exemptions that are "applicable on the date of the filing of the petition," incorporates all of the state exemption law, including the "date of debt" provision of Alabama Code § 6-10-1. Id. at 905. The court thus ruled that the old exemptions applied in a pure "old debt" Chapter 7 case.

The debtors here argue that Norris is no longer good law for two reasons. First, debtors argue that the inflation index provision found in the new Alabama Code § 6-10-12 implicitly repeals Alabama Code § 6-10-1's "date of debt" provision in favor of a "date of claiming" rule:

---

[1] 11 U.S.C. § 522(b)(1) at the time of the Norris opinion.

4

Case 15-02775    Doc 32    Filed 01/15/16    Entered 01/15/16 13:00:20    Desc Main
Document      Page 4 of 17

> On July 1, 2017, and at the end of each 3-year period thereafter, the State Treasurer shall adjust each dollar amount in this article or, for each adjustment after July 1, 2017, each adjusted amount, by an amount determined by the State Treasurer to reflect the cumulative change in the Consumer Price Index (CPI) as published by the United States Department of Labor, or, if that index is no longer published, a generally available comparable index, for the 3-year period ending on the December 31, preceding the adjustment date and rounded to the nearest twenty-five dollars ($25.00). The State Treasurer shall publish the adjusted amounts. <u>The adjusted amounts apply to exemptions claimed on or after April 1, following the adjustment date</u>.

[Emphasis added.] The last sentence of § 6-10-12 appears inconsistent with the "date of debt" provision of § 6-10-1. However, at least in the context of this case, the Court finds that the new § 6-10-12 does not amend or repeal § 6-10-1 by implication. Alabama Constitution Article IV, Section 45 requires a statute to list specifically any prior laws it is amending, which did not occur with respect to § 6-10-1. And the indexing provision of §6-10-12 does not take effect until April 2018; there may be an argument as to implicit amendment or repeal in 2018, but it is not yet ripe.

Second, debtors contend that <u>U.S. v. Security Industrial Finance</u>, 459 U.S. 70, 103 S.Ct. 407 (1982), cited by the Eleventh Circuit in <u>Norris</u>, has been subsequently overruled in <u>Owen v. Owen</u>, 500 U.S. 305, 111 S.Ct. 1833 (1991), and thus the rationale of <u>Norris</u> has been undermined. Even if that were true, until the Eleventh Circuit overrules <u>Norris</u>, it is still binding precedent in this circuit and on this court. See <u>Rodriguez De Quijas v. Shearson/American Express, Inc.</u>, 490 U.S. 477, 484 (1989) (the court of appeals should follow its precedent in a directly controlling case even if it "appears to rest on reasons rejected in some other line of decisions"). Moreover, both <u>Security Industrial</u> and <u>Owen</u> are not directly on point since they deal with lien avoidance under Bankruptcy Code § 522(f), not the claiming of an exemption under § 522(b)(3). The Court thus concludes that, in Chapter 7 cases where all the debts were created prior to the change in law, the old exemption limits apply pursuant to <u>Norris</u>.

5

Case 15-02775    Doc 32    Filed 01/15/16    Entered 01/15/16 13:00:20    Desc Main
Document      Page 5 of 17

"Mixed old and new debt" cases. The more difficult issue here is what to do regarding exemptions in Chapter 7 cases with debts arising both before and after the June 11, 2015 change in exemption limits. These 41 cases constitute the first batch of post-amendment exemption challenges, and most involve pure "old debt." However, some of the cases are "mixed," and most cases for the foreseeable future will be "mixed." As of the writing of this opinion, seven months after the June 2015 amendment, almost all or certainly most of the Chapter 7 cases currently being filed involve a mixture of pre- and post-amendment debt, since most Chapter 7 debtors will have incurred at least some debt within the last several months prior to their bankruptcy filing.

And the problem of debts with different applicable exemptions will get more complicated in the future. Since the new Alabama Code § 6-10-12 indexes the exemption amounts every three years starting in April 2018, many cases filed in the second half of 2018 will have debts subject to three sets of exemption limits: pre-June 11, 2015; June 11, 2015 through March 30, 2018; and post-April 1, 2018. Chapter 7 cases filed after April 2021 (when the next adjustment takes place) will routinely have debts incurred during four sets of exemptions periods. With mortgage loans now extending up to forty years and new automobile loans up to eight years, a Chapter 7 debtor may have an unsecured deficiency claim arising out of a mortgage loan or vehicle loan many years -- even decades -- after the debt was incurred.

The local bankruptcy and federal district courts struggled with this issue over thirty years ago, after the Alabama exemptions were last raised in 1980. Bankruptcy Judge Will Caffey initially held that where "most, if not all, of the debts" were incurred prior to the amendment, the exemptions should be limited to the old amounts. In re Browning, 13 B.R. 6, 8 (Bankr. S.D. Ala. 1981). See also In re Bradley, 19 B.R. 265 (Bankr. S.D. Ala. 1982). However, in Goldsby v.

6

Stewart, 46 B.R. 692 (S.D. Ala. 1983) and In re Perine, 46 B.R. 695 (S.D. Ala. 1983), District Judge Virgil Pittman found that applying the old exemptions where there was a mixture of old and new debt was unfair because it deprived the debtors of the larger exemption to which they were entitled and provided the new creditors a "windfall to which they are not entitled." Goldsby, 46 B.R. at 694. Judge Pittman noted at the time of his 1983 opinions, approximately three years post-amendment, that the number of pre-amendment exemption claims should be diminishing. Id. That observation is little comfort now because, as described above, the exemption amounts will continue to change every three years as a result of § 6-10-12's new indexing provision. Judge Pittman remanded both cases to the bankruptcy court to address the "practical problem of apportioning the exemption" without specifying what method should be used. Id.

Then-Chief District Judge Brevard Hand confronted the issue in In re Rester, 46 B.R. 194 (S.D. Ala. 1984). The bankruptcy judge had allowed the debtor the post-1980 $3,000 personal property exemption but then applied the old exemption ($1,000) to the extent there were pre-1980 claims. Judge Hand rejected that approach:

> The Bankruptcy Court, therefore, instead of *apportioning* the exemptions between "old" and "new" creditors, is simply paying off "old" creditors to the extent of $2,000.00. Any property claimed as exempt above the old $1,000.00 exemption is paid into court and held until the pre-May 19, 1980 creditors filed a claim for it…. This scheme is not *apportionment*. Instead, the Bankruptcy Court is paying off pre-May 1980 creditors while not affording the debtor any advantage to which the new law entitles him.

46 B.R. at 199 [emphases in original].

Judge Hand noted that Norris "does not mandate" a holding that exemptions be based upon the date of debt in a mixed debt bankruptcy case and offered several reasons for applying the exemption amounts applicable on the date of the petition. Id. at 194-95. First, the other

7

Case 15-02775  Doc 32  Filed 01/15/16  Entered 01/15/16 13:00:20  Desc Main
Document      Page 7 of 17

bankruptcy courts in Alabama were applying the new exemptions in "mixed" cases, and the interest of uniformity inclined him to reject split exemptions. Id. at 199. Second, Bankruptcy Code § 522(b) authorizes exemptions from "property of the estate," which is created by the filing of the bankruptcy petition. 11 U.S.C. § 541(a). "Thus, the appropriate date for determining exemptions is the date of filing, not the date of indebtedness. Use of the latter time creates confusion in a process intended to simplify financial problems." Id. at 200. Finally, applying the outdated lower exemptions to a current bankruptcy would make "a mockery of the 'fresh start' intended by Congress." Id.

However, because other local district court opinions had called for apportionment without specifying the exact method, Judge Hand declined to adopt the "date of petition" method and instead set out what he saw as the best apportionment method. He called for the difference between the old and new exemption amounts to be allocated to the "old" creditors in proportion of their debt to the total unsecured indebtedness. Id. at 201. In effect, the debtor could utilize only the old exemption plus that portion of the increased exemption available against post-amendment creditors.

Although the Rester method has the advantage of being fairer to debtors and not allowing a windfall to "old" creditors, it has both practical and legal problems. On a practical level, the exemption apportionment process is probably more complicated than Judge Hand envisioned. It is unclear from the Rester opinion whether the unsecured debt would be determined by claims scheduled or claims filed. Bankruptcy Schedule F contains a place for debtors to list the date each debt was incurred, but there is no requirement for any kind of detail or for multiple dates. Basing the apportionment on claims filed raises another set of problems. A Chapter 7 trustee needs to know the applicable exemptions at the beginning of a case to determine whether there is

8

any property in the estate to be liquidated for the benefit of unsecured creditors and whether to tell creditors to file a claim.  Proofs of claim for non-governmental entities must be filed within 90 days after the first meeting of creditors and by governmental entities within 180 days.  Fed. R. Bankr. P. 3002(c).  The timing creates something of a chicken-and-egg problem if the apportionment is based on claims filed:  the Chapter 7 trustee often does not know whether there is non-exempt property to be distributed (and thus whether to tell creditors to file claims) until he knows the applicable exemption amounts, but he will not know the exemption amounts until the proofs of claim are in.

Of course, the proofs of claim may not themselves solve the problem.  Among the most prolific filers of unsecured claims in this court are debt purchasers who have purchased old credit card debt.  Few have documentation other than an account name, account number, and amount of debt.  See Federal Trade Commission, The Structure and Practices of the Debt Buying Industry, p. 29-37 (2013).  Of course, for purposes of the Alabama Code § 6-10-1, it is unclear when unsecured credit card debt was incurred -- when the charges were made (usually extending over years), at the time of the last payment, or at the time of charge-off.  Either the trustee or the creditors must bear the expense and burden of obtaining information about the dates of debts.

More significantly, the legal problem with the Rester approach is that it violates Bankruptcy Code § 726(b), which mandates that payments on unsecured claims "shall be made pro rata among claims of the kind specified in each such particular paragraph . . ."  "11 U.S.C. § 726(b) plainly mandates pro rata distribution of assets among creditors in the same statutory class. . . .  The use of a word 'shall' with the pro rata requirement in § 726(b) indicates that such distribution is not discretionary."  Specker Motor Sales Co. v. Eisen, 393 F.3d 659, 662 (6th Cir. 2004).  Thus, for example, if a Chapter 11 debtor's counsel has received interim compensation in

9

Case 15-02775    Doc 32    Filed 01/15/16    Entered 01/15/16 13:00:20    Desc Main
Document      Page 9 of 17

a case which later proves to be administratively insolvent, the lawyer must disgorge those fees so that he or she receives only the same prorated distribution made to other approved administrative claimants. Id. The same rule applies to unsecured claims:

> Although unsecured creditors may belong in different statutory classes for distribution purposes based on their priority status (§ 507(a)) or the timeliness of the filing of their claim (§ 726(a)), there is no basis for dividing unsecured creditors into different classes of distribution based on differing exemption rights.

In re Kyle, 510 B.R. 804, 816 fn. 15 (Bankr. S.D. Ohio 2014).

The priority schemes and equality of treatment in §§ 507(a) and 726(a) and (b) are the foundation of the Bankruptcy Code's goal to fairly distribute a debtor's non-exempt assets among creditors. The Code is designed to achieve an "equality of treatment among similarly situated creditors." In re Jet Florida System, Inc., 841 F.2d 1082, 1083 (11th Cir.1988); "Creditors within a given class are to be treated equally, and bankruptcy courts may not create their own rules of superpriority within a single class." Matter of Saybrook Mfg. Co., Inc., 963 F.2d 1490, 1496 (11th Cir. 1992). This basic tenet of bankruptcy law should not be undermined by state exemption law.[2]

---

[2] See e.g., Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 655-56 (2006) ("we are mindful that the Bankruptcy Code aims, in the main, to secure equal distribution among creditors. We take into account, as well, the complementary principle that preferential treatment of a class of creditors is in order only when clearly authorized by Congress"); see also Kothe v. R.C. Taylor Trust, 280 U.S. 224, 227 (1930); Kuehner v. Irving Trust Co., 299 U.S. 445, 451 (1937)); Nathanson v. NLRB, 344 U.S. 25, 29 (1952); United States v. Embassy Restaurant, Inc., 359 U.S. 29, 31 (1959); In re Lockard, 884 F.2d 1171, 1178 (9th Cir. 1989); In re Nat'l Gas Distributors, LLC, 556 F.3d 247, 259 (4th Cir. 2009) ("an overarching policy of the Bankruptcy Code is to provide equal distribution among creditors"); In re Bethlehem Steel Corp., 479 F.3d 167, 172 (2d Cir. 2007) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed"); Boston Reg'l Med. Ctr., Inc. v. Massachusetts Div. of Health Care Fin. & Policy, 365 F.3d 51, 57 (1st Cir. 2004) (provisions that grant priority in bankruptcy are to be narrowly construed) (citing Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 953 (1st Cir. 1976) (stating, "[w]e begin with the premise that the theme of the Bankruptcy Act is equality of distribution. If one is to be preferred over others, the purpose

Although states have the right to define their own exemptions, the U.S. Supreme Court held in Owen v. Owen, 500 U.S. 305, 111 S.Ct. 1833 (1990) that it "ha[s] no basis for pronouncing an opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains." "[A] state's ability to define its exemptions is not

---

should be clear from the statute") (quotation marks omitted); In re Dow Corning Corp., 237 B.R. 380, 393 (Bankr. E.D. Mich. 1999) ([a] central policy of the Bankruptcy Code is the equitable distribution of a debtor's assets among its creditors. Begier v. IRS, 496 U.S. 53, 58 (1990); In re McCafferty, 96 F.3d 192, 196 (6th Cir. 1996); In re Plourde, 418 B.R. 495, 507 (B.A.P. 1st Cir. 2009) ("In most Chapter 7 cases, like this one, a claim holder's 'rung' on the priority 'ladder' created under section 726 is crucial because the estate assets are limited. There are usually insufficient assets to pay all claimants in full, and section 726(b) mandates pro rata distribution among all claimants at each level, or rung of the priority ladder, with an absolute priority cutoff. All allowed claimants at a particular level or rung of the ladder must be paid in full before any estate funds can be distributed to holders of claims at the next lower rung. Thus, the race among claimants is to reach the highest rung on the claims ladder" (citing In re Stoecker, 151 B.R. 989, *995 (Bankr. N.D. Ill.1992), rev'd on other grounds, 179 B.R. 532 (N.D. Ill. 1994)); Matter of Wickstrom, 113 B.R. 339, 349 (Bankr. W.D. Mich. 1990) ("[T]here should be orderly administration of debtor's property without a race by creditors for judgments and liens which give priority to the more aggressive creditors." "An inequitable distribution of property, including a preferential payment to one creditor at the expense of other creditors, or a fraudulent conveyance, subverts the spirit as well as the mandate of the Bankruptcy Code and undermines federal policy. A fundamental purpose of the bankruptcy laws is to distribute property pro rata to creditors; the statute would become seriously deficient if construed to allow a creditor or a transferee of property to defeat its purpose and obtain an advantage over other creditors"); see also Reed v. McIntyre, 98 U.S. 507 (1878). Accord, Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300 (1911); Kothe v. R.C. Taylor Trust, 280 U.S. 224 (1930); Wukelic v. U.S., 544 F.2d 285 (6th Cir. 1976); In re Dzierzawski, 528 B.R. 397, 417 (Bankr. E.D. Mich. 2015) (Debtor proposed voluntary dismissal based on agreement in which two non-priority unsecured creditors would be paid the same priority level as two creditors that would be paid in full under the proposed dismissal. The court rejected the dismissal on the grounds that "in effect, the Debtor's proposed dismissal would result in a reordering of priorities, which is one of the factors that cases recognize as disfavoring a voluntary dismissal under § 707(a)"; see generally Pension Benefit Guaranty Corp. v. Belfance (In re CSC Indus., Inc.), 232 F.3d 505, 508 (6th Cir. 2000) ("[A] fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally"); In re Warren, 181 B.R. 136, 139 (Bankr. N.D. Ala. 1995) (denying a joint motion by the debtor and the petitioning creditors to dismiss an involuntary bankruptcy, because the proposed settlement did not pay similarly situated creditors equally).

11

absolute and must yield to conflicting policies in the Bankruptcy Code." Patriot Portfolio, LLC v. Harry Weinstein (In re Weinstein), 164 F.3d 677, 683 (1st Cir. 1999).

Congress has plenary power to enact uniform federal bankruptcy laws, and inconsistent state laws are preempted by conflicting bankruptcy code provisions. U.S. Const. art. 1, § 8, cl. 4; Weinstein, supra at 682. Applying different exemptions to creditors based upon the date their claims arose would violate §§ 507(a) and 726(b) of the Bankruptcy Code, neither of which provide for such treatment:

> [Prorating the exemptions based upon the date of debt] in the manner suggested by the Trustee would foster unequal treatment of similarly situated creditors. Administrative costs and complexities aside, tolerating multiple tiers of debt within the same class with disparate treatment as defined by state exemption statutes strikes at the heart of federal bankruptcy law.

In re Kyle, 510 B.R. 804, 819 (Bankr. S.D. Ohio 2014). See also In re Pursley, 2014 WL 293557 (Bankr. N.D. Ohio 2014). "When a debtor claims bankruptcy exemptions under state law, the effect of claiming the exemptions should be determined under state law. [Citation omitted.] However, to the extent that governing bankruptcy law restricts, modifies or derogates state exemptions, federal law prevails pursuant to the Supremacy Clause." Matter of Wickstrom, 113 B.R. 339, 343 (Bankr. W.D. Mich. 1990) *(*citing Perez v. Campbell, 402 U.S. 637, 651-52, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971))*;* U.S. Const., art. 6 cl. 2.

If Rester-type proration of exemptions violates Bankruptcy Code § 726(b), how should the exemption amounts be determined in a "mixed" case with both pre- and post-amendment debt? As Judge Pittman pointed out in Goldsby and Perine, supra, the original Browning method of simply applying the old exemption amount when there is a mixture of debts is unfair because it denies the debtor the benefit of the increased exemption amount until absolutely all of his "old" debt is gone -- which could be several more decades in the case of a mortgage loan

12

deficiency. Some courts have applied the old exemption amounts to the extent of pre-amendment debt and then attempted to comply with the pro rata requirement of § 726(b) by distributing the funds to all unsecured creditors pro rata according to ordinary bankruptcy priorities. See, e.g., In re Fishman, 241 B.R. 568, 574-75 (Bankr. N.D. Ill. 1999). However, this approach gives "new" creditors more than they would have otherwise received and is "an artificial alteration of state law that no longer complies with the language or purpose of a state exemption . . . ." In re Kyle, 510 B.R. at 819, fn. 18.

The undersigned judges find that, in Chapter 7 cases with a "mix" of debts which pre- and postdate the change in exemptions, the approach which complies with the Bankruptcy Code and is most consistent with other law is to apply the exemption limits in effect at the time of the bankruptcy petition, for several reasons.

First, as set out above, applying the exemption limits applicable as of the date of the petition is consistent with other provisions of the Bankruptcy Code determining the rights of creditors and debtors as of the petition date. "It is hornbook bankruptcy law that a debtor's exemptions are determined as of the date of the filing of the petition." Wickstrom, 113 B.R. at 343-44 (quoting In re Friedman, 3d B.R. 275, 276 (Bankr. E.D. Pa. 1984); 11 U.S.C. § 522(b)(3)(A). As Judge Hand noted in Rester, Bankruptcy Code § 522(b) authorizes an individual debtor to claim exemptions "from property of the estate," which is created on the petition date by the filing of the petition under Bankruptcy Code § 541(a). And although this rationale was not sufficient in itself to override Alabama Code § 6-10-1 in the pure "old debt" case of Norris, 701 F.2d at 904, the trustee's avoidance powers to pursue preferential transfers and fraudulent transfers are determined as if he were a hypothetical judgment lien creditor as of the date of the bankruptcy petition. 11 U.S.C. § 544(a). Significantly, since Norris the U.S.

13

Supreme Court has held in Owen v. Owen, supra, that a debtor's ability to avoid a judgment lien under Bankruptcy Code § 522(f) is determined by the state law exemption at the time of the petition -- not when the lien was perfected.

Second, applying the exemption limits applicable at the time of the petition date is consistent with Congress's intent to allow debtors a "fresh start" in bankruptcy. See In re Brown, 541 B.R. 906, 909 (Bankr. M.D.Fla. 2015)("[t]he primary purpose of bankruptcy law is to provide an honest debtor with a fresh start by relieving the burden of indebtedness"). Such fresh start requires a liberal interpretation of exemption limits to allow a debtor to retain a minimum level of property to ensure that the debtor and his or her family will not be completely destitute and thus a burden to society. In re Starr, 485 B.R. 835, 837 (Bankr. N.D. Ohio 2012). Though a court may not enlarge a statutory exemption and read words into it that the legislature did not intend, it must nonetheless liberally interpret exemption statutes in favor of the debtor with any doubts to be resolved in favor of allowing the exemption. In re Hasse, 246 B.R. 247, 251-52 (Bankr. E.D.Va. 2000)(citations omitted). "[E]xemptions should be liberally construed in furtherance of the debtor's right to a 'fresh start.'" In re Gutierrez Hernández, 2012 WL 2202931, at *2 (Bankr. D.P.R. June 14, 2012); In re Newton, 2002 WL 34694092, at *3 (1st Cir. BAP 2002); Christo v. Yellin (In re Christo), 228 B.R. 48, 50 (1st Cir. BAP 1999).

If all pre-June 2015 debt must be gone before the updated exemptions are applied in a Chapter 7 bankruptcy case, as a practical result many debtors will not benefit from the updated exemptions for another decade or more, leaving the 1980 limits in effect for about forty-five years. Having an automobile available to go to work is a practical necessity for most Alabamians, given the scarcity of public transportation in this state. It is not realistic to expect a debtor to be able to fit all of his personal property, including a vehicle, under the 1980-version

14

$3,000 personal property exemption and retain a vehicle with which to go to work. It is also not consistent with the Bankruptcy Code's "fresh start" goal to require a Chapter 7 debtor who needs to keep his vehicle in order to go to work to re-purchase the portion of his vehicle's value which (along with the value of all of his other earthly possessions) exceeds $3,000. The post-June 2015 personal exemption of $7,500 is still not overly generous, but it gives the debtor a chance at a "fresh start."

Third, this result is consistent with Judge Hand's reasoning (although not his holding) in Rester, supra. As discussed above, Judge Hand noted that Norris did not mandate that exemptions in bankruptcy court are dependent on the date on which the debt was incurred and that there were "at least three arguments for rejecting Norris' application in this situation [of mixed old and new debt]." 46 B.R. at 199. Judge Hand felt constrained to go along with some sort of apportionment method based on other rulings in the Southern District of Alabama but made clear his preference for a "date of petition" rule. There is no evidence in Rester that the parties brought Bankruptcy Code § 726(b)'s pro rata mandate to his attention.

Fourth, a date of petition rule for mixed debt cases is consistent with the state legislature's admittedly imperfectly-conveyed intent. Although we find, as described above, that the last sentence of the new Alabama Code §6-10-12 does not repeal §6-10-1 (at least at this time), it does not make sense for the legislature to use current inflation as measured by the Consumer Price Index per the new § 6-10-12 if the revised exemption is to be applied in a bankruptcy which may not take place for a couple of decades.

Applying a "date of petition" rule to "mixed debt" Chapter 7 cases is not unconstitutional as an impairment of contract rights. The contract clause of the Constitution of the United States (Article I, section 10, clause 1) forbids a state government from passing a law that impairs the

15

obligations of contracts; however, the contract clause applies only to states.  See In re Curry, 5 B.R. 282, 292 (Bankr. N.D. Ohio 1980), superseded and vacated on other grounds, In re Curry, 698 F.2d 298 (6th Cir. 1983); see also In re Pape, 7 B.R. 443, 447 (Bankr. N.D. Fla. 1980). Under its power to establish bankruptcy law, Congress can discharge a debtor's personal obligation because it is not prohibited from impairing the obligations of contracts as states are. See Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935).  So even if there were a problem with a state changing exemptions from "date of debt" to date of suit or date of exemption claim, there is no such problem with Congress doing so through the Bankruptcy Code.

Judge Hand's reluctant apportionment system ordered in Rester is not binding on this Court.  See In re Harper, 497 B.R. 155, 158-59 (Bankr. N.D. Ga. 2013) ("[a] bankruptcy court, as a unit of the district courts, is not bound by a previous decision of a district court even in the same district relating to the same issue when that court is in a multi-judge district since that district court decision would not be binding in that district as a whole") (quoting In re Maurer, 271 B.R. 207, 211 n. 13 (Bankr. M.D. Fla. 2002)).  As noted above, Judge Hand was apparently not presented with the pro rata requirement of Bankruptcy Code § 726(b).  Nor did he have the benefit of the Supreme Court's less "hands off" approach to state exemptions in Owen v. Owen. Given the thirty-one years since Rester and the fact that the exemption changes in Alabama will no longer be a one-time event as in the 1980's, the undersigned judges believe it is time to re-examine Rester and adopt a new approach.

The result reached here is not perfect.  It is impossible to reconcile completely Alabama Code §§ 6-10-1 and 6-10-12 with Bankruptcy Code §§ 507(a), 522(b) and 726(b) in the context of a "mixed debt" Chapter 7.  It is somewhat incongruous that just a small amount of post-

Case 15-02775    Doc 32    Filed 01/15/16    Entered 01/15/16 13:00:20    Desc Main
Document      Page 16 of 17

amendment debt will, under this holding, flip the applicable exemption limits from old to new.[3] However, the undersigned judges believe that applying the exemption limits as of the date of the petition in "mixed debt" Chapter 7 cases complies with the pro rata mandate of Bankruptcy Code § 726(b) and is the approach most consistent with other state and bankruptcy provisions.

Conclusion

The Clerk of the Court is requested to set each of the above-listed cases for a hearing on the Court's regular dockets for determination of the exemption amounts applicable in each particular case and entry of a final order in each of the cases which is consistent with this opinion.

Dated: January 15, 2016

_____
HENRY A. CALLAWAY
CHIEF U.S. BANKRUPTCY JUDGE

_____
JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE

---

[3] However, assuming the country does not experience dramatic inflation, Alabama's exemption changes in the future under the new indexing provision will be less dramatic than those which took effect in May 1980 and June 2015.